UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

KELLY COMPTON,

                          17 Civ. 5581 (RWS)

          Plaintiff,          OPINION

  -against-

JEFFREY SESSIONS,

          Defendant.

------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/28/17

A P P E A R A N C E S:

    <u>Attorneys for Plaintiff</u>

    JONES, LLP
    670 White Plains Rd, Penthouse
    Scarsdale, New York 10583
    By:  Steven T. Sledzik, Esq.

    <u>Attorney for Defendant</u>

    JOON H. Kim
    Acting United States Attorney
    Southern District of New York
    86 Chambers Street, 3rd Floor
    New York, New York 10007
    By:  Rachael L. Doud, Esq.

**Sweet, D.J.**

Defendant Jefferson B. Sessions, Attorney General of the United States (the "Defendant") has moved to dismiss Kelly Compton's ("Compton" or the "Plaintiff") complaint (the "Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which alleges one cause of action for gender discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq*. As set forth below, the motion is granted.

## I. Prior Proceedings

The Plaintiff commenced this action on July 21, 2017, alleging gender discrimination by the Defendant as set forth in her Complaint and as set forth below. The instant motion was filed on September 29, 2017, and was argued and marked fully submitted on November 1, 2017.

The Plaintiff is a female who has been employed by the Federal Bureau of Prisons (the "BOP") since 2004. Since 2013, her duty station has been the Federal Correctional Institute ("FCI") Otisville ("Otisville"), located in Orange County, New

1

York. The Plaintiff's most recent title is Human Resource Specialist.

The Plaintiff's husband has been a Correctional Counselor at Otisville since 2013, and has been employed by BOP since December 10, 1995. According to the Organization Chart at Otisville, Mr. Compton does not fall within the direct chain of command of the Human Resources Manager ("HRM").

Plaintiff alleges, that in response to a job posting announcement on July 25, 2016, she applied, on or about August 8, 2016, to be promoted to the position of HRM. Plaintiff alleges that, on or about August 18, 2016, she was "found to be qualified and was referred as part of the Best Qualified group," and that on August 19, 2016, the retiring HRM, Darla Schields, told the Plaintiff that she "was referred to as the number one candidate and recommended for selection by the then Warden at Otisville, Juan Baltazar." Schields also showed the Plaintiff an email from Baltazar to the Northeast Regional Office in which Baltazar "listed Plaintiff as the number one selectee for the HRM position."

The Plaintiff alleges that on August 23, 2016, Gloria Kessler, another Human Resource Specialist at Otisville, informed the Plaintiff that the acting warden, D.S. Kulick, "had informed her that Plaintiff's application was being reviewed as a possible violation of nepotism regulations" because the Plaintiff's husband was a Correctional Counselor at Otisville. Kulick requested Kessler conduct research on the issue, and Kessler then consulted the Executive Assistant at the BOP's central office in Washington, D.C., who cited Pre-employment Policy Number 3330.02 (the "Policy"), which was adopted pursuant to 5 U.S.C. § 3110. Section 3110 provides, in relevant part:

> A public official may not appoint, employ, promote, advance, or advocate for appointment, employment, promotion, or advancement, in or to a civilian position in the agency in which he is serving or over which he exercises jurisdiction or control any individual who is a relative of the public official. An individual may not be appointed, employed, promoted, or advanced in or to a civilian position in an agency if such appointment, employment, promotion or advancement has been advocated by a public official, serving in or exercising jurisdiction or control over the agency, who is a relative of the individual.

5 U.S.C. § 3110. BOP's Policy states, in relevant part:

> [A] public official may not employ, appoint, promote, advance, or advocate for employment, appointment, promotion, or advancement for a relative over whom he/she has jurisdiction or control. For most positions, there is enough discretion with the actions listed above so that this is not a problem. A few positions, however, such as Warden, non-complex

3

> Warden, and Human Resource Manager are by policy
> intimately involved in these processes.
>
> Therefore it is the policy of the Federal Bureau of
> Prisons to prohibit the hiring of a relative of
> Warden, non-complex Associate Warden, or Human
> Resource Manager at the same institution/complex.
> Also, close relatives such as a husband, wife, or
> domestic partner must not be placed in the direct
> supervisory chain.[1]

Pre-employment Policy Number 3330.02.

The Plaintiff alleges that on September 16, 2016, Kulick informed her that she had not been selected for the HRM position "due to the fact that her husband is already employed at Otisville," and that a female Human Resource Specialist from United States Prison Thomson had been selected instead. The Plaintiff alleges that the selecting official was Michael Carvajal, Regional Director of the Northeast Regional Office of BOP. Plaintiff alleges that, later in the day on September 16, BOP Human Resource Administrator Camille Duchaussee called her and told her: "by far you were the person we wanted to select, but policy precluded us from doing so, due to your husband working at FCI Otisville" and that if the Plaintiff had been single, she would have been selected for the position.

---

[1] The Policy became effective July 25, 2016, but the Plaintiff alleges that the same language was previously located at Section 3000.03 of the BOP's Human Resources Management Manual, dated December 19, 2007.

The Plaintiff also alleges that she has occasionally been temporarily promoted, appointed, and paid for as the HRM at Otisville, first from September 4, 2016 to November 26, 2016, and for a few days after that time.

The Plaintiff alleges that the Defendant has treated similarly situated men better and differently than the Plaintiff by applying its anti-nepotism policies and laws to her but not to them. The Plaintiff alleges that "[i]n recent past (since 1967 [when 5 U.S.C. § 3110 was enacted] and certainly since approximately 1984), BOP on numerous occasions, permitted Wardens, Associate Wardens and Human Resource Managers (all male) to be in their positions with a spouse at the same location, often hired after them." The Plaintiff has provided thirteen purported examples, two that allegedly took place in 2004 to 2005, three that allegedly took place in 2012 to 2016, and the rest undated, at a handful of facilities across the country.

## II. **The Applicable Standard**

The Rule 12(b)(6) standard requires that a complaint plead sufficient facts to state a claim upon which relief may be

granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). On a motion to dismiss under Rule 12(b)(6), all factual allegations in the complaint are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor. *Littlejohn v. City of N.Y.*, 795 F.3d 297, 306 (2d Cir. 2015); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (quotation marks omitted). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 570).

A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). In other words, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557 (internal quotation marks omitted).

6

Additionally, while "a plaintiff may plead facts alleged upon information and belief 'where the belief is based on factual information that makes the inference of culpability plausible,' such allegations must be 'accompanied by a statement of the facts upon which the belief is founded.'" *Munoz-Nagel v. Guess, Inc.*, No. 12-1312, 2013 WL 1809772, at *3 (S.D.N.Y. Apr. 30, 2013) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)) and *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 384 (S.D.N.Y. 2006); *see also Williams v. Calderoni*, No. 11-3020, 2012 WL 691832, *7 (S.D.N.Y. Mar. 1, 2012). The pleadings, however, "must contain something more than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216 (3d ed. 2004)).

## III. **The Defendant's Motion to Dismiss is Granted**

The Defendant contends that the Plaintiff failed to state a plausible claim for relief because, first, her allegation that the individual selected for the HRM position is female directly undercuts her allegations of discrimination. Second, the anti-nepotism policy can reasonably be read as

7

applying to the Plaintiff and there is no basis to conclude that BOP intentionally misapplied it to the Plaintiff on the basis of her gender. Third, the Plaintiff has not alleged that the male employees she compares herself to were "similarly situated in all material respects" as required by case law. *See Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014).

The United States Supreme Court has held that an employment discrimination plaintiff need not establish a *prima facie* case in order to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). Indeed, "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Rule 8(a) provides that notice pleading is a liberal standard focused on "defin[ing] disputed facts and issues and . . . dispos[ing] of unmeritorious claims." *Swierkiewicz*, 534 U.S. at 512. Moreover, the United States Supreme Court has "rejected the argument that a Title VII complaint requires greater 'particularity,' because this would 'too narrowly constric[t] the role of the pleadings.'" *Id.*

(citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n.11).

As such, to satisfy pleading requirements on a claim of employment discrimination, a plaintiff need only "give respondent fair notice of what [the plaintiff's] claims are and the grounds upon which they rest. . . ." *Id.* at 514. A plaintiff must prove that "the adverse employment decision was motivated at least in part by an impermissible reason, *i.e.*, a discriminatory reason." *Stratton v. Dep't for the Aging for the City of N.Y.*, 132 F.3d 869, 878 (2d Cir. 1997) (citation omitted). In order to raise an inference of discrimination on the basis of differential treatment, a plaintiff must show that "she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (citation omitted). "At the pleadings stage, . . . a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).

9

Here, the Plaintiff alleges that the Policy is not discriminatory by its nature, but was discriminatory as applied to her. The Policy establishes that the BOP's primary goal in prohibiting the hiring and promotion of "a relative of Warden, non-complex Associate Warden, or Human Resource Manager at the same institution/complex" is to cabin fears of nepotism within the BOP hiring structure regarding the hiring of a relative of a person already holding a position of power. Crucially, the structure and wording of the Policy demonstrate that for it to take effect, the already-hired relative must be in one of the three listed positions of power prior to the applicant-relative's hiring. Absent this fact, the Policy would not make sense because it does not address the threat of power dynamics and nepotism in hiring and promotion. Therefore, the Policy is not even implicated in this way unless the first-hired relative held one of the aforementioned positions.

The Plaintiff applied for a promotion to HRM, one of the listed positions of power, *after* her husband had already been employed for many years at the same complex as a Correctional Counselor. Moreover, the Correctional Counselor position is not in the direct supervisory chain of command of

10

the HRM position. Thus, because the Plaintiff would have been the second hire of the two, and because her husband did not hold one of the listed positions of power, the Plaintiff's promotion to HRM would not have implicated the Policy. Therefore, according to the Policy's language, BOP was permitted to hire the Plaintiff as HRM. Accordingly, the Policy could not be discriminatorily applied to the Plaintiff because it did not apply to her at all. Therefore, in order to succeed, the Plaintiff must plead sufficient facts alleging that BOP discriminated against her on the basis of her gender, separate and apart from the Policy.

Plaintiff has alleged a total of thirteen instances in which a husband and wife were hired at BOP, one after the other, and either the husband or wife was in one of the above-mentioned positions of power as the first- or second-hired person. In all but one instance, the wife was hired into a non-authoritative position after her husband was employed by BOP as HRM, Associate Warden, or Warden. Each of these twelve instances, therefore, appears to be in plain violation of the Policy, which clearly prohibits BOP from hiring a relative of a HRM, Associate Warden, or Warden. However, that these twelve instances may have been violations of the Policy has no bearing on the present case.

Because the BOP disregarded the Policy in those instances and failed to properly read it in this instance does not establish discrimination in this instance. Moreover, in these twelve instances, the twelve women were hired *despite* the Policy, lending support for a non-discrimination argument. Thus, Plaintiff has not sufficiently pled that she is similarly situated to these twelve instances.

In the remaining instance that the Plaintiff cites in her Complaint, the husband was hired into the position of power after the wife. Thus, because the person in the position of power was the second hire, the Policy was not implicated and the husband's hiring was proper in terms of the Policy. Plaintiff's scenario is comparable in that she sought the HRM position after her husband had been working at BOP in a non-authoritative position, so that her promotion would not have been a Policy violation. However, although the Plaintiff has demonstrated that she is similarly situated to the husband in these ways, she has not pled any facts suggesting BOP discriminated against her on the basis of her gender. Absent allegations of discriminatory facts, the Plaintiff's claim fails for facial implausibility.

## IV. **Conclusion**

Based upon the conclusions set forth above, the Defendant's motion to dismiss the Complaint is granted without prejudice. The Plaintiff is granted leave to amend the Complaint within 60 days.

It is so ordered.

**New York, NY**
**November 16, 2017**

_____
ROBERT W. SWEET
U.S.D.J.